UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WILLIAM MICHAEL BUCKMAN ) <br> AND ) <br> MEGAN LEAH BUCKMAN ) <br> ) <br> DEBTORS ) <br> ) | CASE NO. 15-32674-jal |

**MEMORANDUM OF LAW IN SUPPORT OF**
**CHAPTER 12 PLAN DATED FEBRUARY 16, 2016**

Come now the debtors, William Michael Buckman and Megan Leah Buckman (the **"Debtors"**), by counsel, and pursuant to the Court's Order for Evidentiary Hearing entered March 18, 2016 (Doc. 163), submits the following Memorandum of Law which sets forth (a) the issues in question, (b) a brief summary of what the evidence will tend to prove and (c) any case authorities or statutes in support of the parties, respective position.

There were two objections filed to the Chapter 12 Plan Dated February 12, 2016 (Doc. 107) (the **"Plan"**). The first is the Objection to Confirmation (Doc. 135) (the **"Farm Credit Objection"**) filed by Farm Credit of Mid-America, PCA, f/k/a Farm Credit Services of Mid-America, PCA (**"Farm Credit"**). The second was the Objection to Confirmation (Doc. 137) (the **"Crop Production Objection"**) filed by Crop Production Services, Inc. (**"Crop Production"**). The Debtors and Crop Production have settled the Crop Production Objection and other contested matters and the adversary proceeding between the Debtors and Crop Production. The Debtors and Crop Production will shortly file pleadings resolving these matters. Therefore, only the Farm Credit Objection remains for the Court's determination.

### The Issues in Question

Farm Credit raises six issues in the Farm Credit Objection. They are:

1. The Plan is not confirmable because it fails to provide Farm Credit with a "replacement lien" on the Debtors' post-petition crops to be grown in 2016 and thereafter pursuant to the cash collateral orders entered in this case. Farm Credit Objection at 1, ¶ 1. This objection raises a number of sub-issues:
2. The Plan is not confirmable because it surrenders Farm Credit's collateral to Farm Credit. Farm Credit Objection at 1, ¶ 2.
3. The Plan is not confirmable because it does not meet the liquidation test. Farm Credit Objection at 1, ¶ 3. There are three factual bases for this objection:
    a. Farm Credit alleges the value of the Debtors' farm is $250,000.00.
    b. Farm Credit alleges the value of the Debtor's residence is $210,000.00.
    c. Farm Credit alleges that the mortgage to Farm Services Agency has been double counted as a debt against the residence and as a debt against the farm.
4. The Debtors failed to file their January and February monthly reports prior to submitting the Plan on February 16, 2016. Farm Credit Objection at 1, ¶ 4. The Debtors have since filed these reports.
5. Farm Credit objects to the feasibility of the Plan because the Debtors have yet to file motions to borrow the funds projected to be necessary to operate the farm. Farm Credit Objection at 1, ¶ 5.
6. Farm Credit objects to the plan providing a payment to unsecured creditors, as they claim a lien on the money from which payment would be made. Farm Credit Objection at 1, ¶ 6.

The Debtors present the issues to the Court as follows:

1. Do the Debtors have the right to surrender the collateral securing a secured claim in the Plan pursuant to 11 U.S.C. § 1225(a)(5)(C) over the objection of the secured creditor?
2. Does Farm Credit presently have a security interest in crops not yet grown where the Debtors have not yet purchased the seed necessary to grow the crops?
3. What is the value, as of the effective date of the Plan, of Farm Credit's security interest?
4. What is the amount that would be paid on such claim if the estates of the Debtors were liquidated under chapter 7 on the effective date of the plan?
5. Is the Plan feasible where the Debtor has not yet obtained financing for the next year's crop?

## A Brief Summary of What the Evidence Will Tend to Prove

**Debtors' Issue 1:** Do the Debtors have the right to surrender the collateral securing a secured claim in the Plan pursuant to 11 U.S.C. § 1225(a)(5)(C) over the objection of the secured creditor?

**Evidence in Support:** The Debtors do not anticipate offering evidence on this issue, as it is one of law.

**Debtors' Issue 2:** Does Farm Credit presently have a security interest in crops not yet grown where the Debtors have not yet purchased the seed necessary to grow the crops?

2

**Evidence in Support:** The Debtors will show that they have not yet purchased the necessary seed. The remaining part of this issue is one of law.

**Debtors' Issue 3:** What is the value, as of the effective date of the Plan, of Farm Credit's security interest?

**Evidence in Support:** At the hearing on the Plan conducted on March 15, 2016, Farm Credit agreed that the value at present of Farm Credit's security interest in future crops is $0.

Mr. Buckman will testify that Farm Credit is holding $100,000 in escrow for application to its secured claim, which amount represents proceeds from crops. Mr. Buckman will further testify that he has a receivable for sold crops in the approximate amount of $12,000. Mr. Buckman will further testify that he holds approximately 15,000 bushels of corn remaining from the 2015 crop. With the consent of Farm Credit, Mr. Buckman is selling this corn for $4.24 per bushel. The total amount of cash, receivables, and crops remaining is approximately $175,600.

Mr. Buckman will testify regarding the future revenues and expenses of the farming operation. He will testify that he expects his operation to yield 120,000 bushels of corn at $4.36, and 12,000 bushels of soybeans at $8.75, and direct USDA payments of $24,000, totaling $648,120.00 per year.

Mr. Buckman will testify that the projected expenses of the farming operation are $565,275.63 per year. Mr. and Ms. Buckman will testify that the projected household expenses are $71,974.04 per year.

Mr. Jonathan Shepard, a farm management specialist with the University of Kentucky, and who acts as bookkeeper for the Debtors, will testify regarding the historic farming operations and projections.

**Debtors' Issue 4:** What is the amount that would be paid on such claim if the estates of the Debtors were liquidated under chapter 7 on the effective date of the plan?

**Evidence in Support:** Mr. Buckman will testify that his opinion is that the value of the farm is $177,500, based on an average valuation of $2,500. Mr. Buckman will testify that of the 71 acres of farmland, only 58 acres are tillable. Of the 58 tillable acres, only 40 acres are good-producing acres of land. Mr. Buckman will testify that his opinion is that the maximum value of the farm is $208,400, with the non-tillable acres worth no more than $1800 per acre, the marginally-tillable acres worth no more than $2500 per acre, and the good-producing acres worth no more than $3500 per acre. The Debtors will tender an appraisal to the Court dated April 13, 2009, in which the value of the farm is stated to have been $191,000. The Debtors will tender the Marion County Property Valuation Administrator's records stating the value of the farm is $191,000.

The Debtors will testify that their opinion is that the value of the residence is $190,000. The Debtors will testify that they built their house, so it has not been tested on the market. The Debtors will tender an appraisal dated April 13, 2009, in which the value of the residence is stated to have been $200,000. The Debtors will tender the Marion County Property Valuation Administrator's records stating the value of the residence is $145,000.

**Debtors' Issue 5:** Is the Plan feasible where the Debtor has not yet obtained financing for the next year's crop?

**Evidence in Support:** Mr. Buckman will testify regarding his historic farming operations and attempts to obtain credit. Mr. Buckman will testify that he will have the financing he needs in order to continue farming.

Mr. Buckman will testify regarding the future revenues and expenses of the farming operation. He will testify that he expects his operation to yield 120,000 bushels of corn at $4.36,

4

and 12,000 bushels of soybeans at $8.75, and direct USDA payments of $24,000, totaling $648,120.00 per year.

Mr. Buckman will testify that the projected expenses of the farming operation are $565,275.63 per year. Mr. and Ms. Buckman will testify that the projected household expenses are $71,974.04 per year.

Mr. Jonathan Shepard, a farm management specialist with the University of Kentucky, and who acts as bookkeeper for the Debtors, will testify regarding the historic farming operations and projections.

## Case Authorities and Statutes in Support of the Debtors

The Court should overrule the Farm Credit Objection and confirm the Plan. The Debtors, as the only parties who can propose a Chapter 12 plan, have an unfettered right to select whether to surrender or retain property subject to a security interest. Farm Credit does not and cannot attach a security interest in property that does not exist at the time of confirmation of the Plan. Even if Farm Credit could have such a security interest, the value of the collateral on the effective date of the Plan, as admitted by Farm Credit's counsel, is $0. The Court furthermore should overrule the Farm Credit Objection because it provides more to unsecured creditors than they would receive in a Chapter 7 liquidation and because it is feasible.

1. **The Debtors have the right to surrender the collateral securing a secured claim in the Plan pursuant to 11 U.S.C. § 1225(a)(5)(C) over the objection of the secured creditor.**

The Court should confirm the Plan because it complies with 11 U.S.C. § 1225(a)(5)(C), which provides that the Debtors may surrender Farm Credit's collateral in the plan. "Only the Chapter 12 debtor can file a plan." *In re Roesner*, 153 B.R. 328, 331 (Bankr. D. Kan. 1993) (citing 11 U.S.C. § 1221).

[T]he court shall confirm a plan if—

5

(5) with respect to each allowed secured claim provided for by the plan--
    (A) the holder of such claim has accepted the plan;
    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
        (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
    (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1225(a). The three options in 11 U.S.C. § 1225(a)(5) are written in the disjunctive as possibilities for the Debtors to propose. While (A) requires the consent of Farm Credit, the Debtors may propose and confirm a plan pursuant to (B) or (C) without the consent of Farm Credit. As will be discussed in Part 3, below, 11 U.S.C. § 1225(a)(5)(B) is generally inapplicable to crop farmers such as the Debtors. The Debtors, as the only ones who can file the Plan, elected to surrender Farm Credit's collateral pursuant to 11 U.S.C. § 1225(a)(5)(C).

Surrender is well-recognized to be available to debtors in a plan even without the consent of the secured creditor. Section 1325(a)(5)(C) is identical to Section 1225(a)(5)(C). *Compare* 11 U.S.C. § 1325(a)(5)(C) *with* 11 U.S.C. § 1225(a)(5)(C). "No court has held that § 1325(a)(5)(C) requires consent of the secured creditor to be effectual, and a number of appellate courts, including the United States Supreme Court, have, albeit in passing, recognized this provision without indicating the consent of the secured creditor was a necessary component." *In re White*, 282 B.R. 418, 422 (Bankr. N.D. Ohio 2002) (quoting *In re Harris,* 244 B.R. 556, 557 (Bankr.D.Conn.2000) (citing *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)) ("If a secured creditor does not accept a debtor's Chapter 13 Plan, the debtor ... [may] surrender the collateral to the creditor."); *Williams v. Tower Loan of Mississippi, Inc.,* 168 F.3d 845, 847 (5th Cir.1999) (Section 1325(a)(5)(C) gives a Chapter 13 debtor the option of adopting its provision.). This is necessarily the case, since otherwise surrender pursuant to Section

6

1225(a)(5)(C) would be allowed only if the secured creditor had also accepted the plan pursuant to Section 1225(a)(5)(A) and would render Section 1225(a)(5)(C) superfluous.

> The Plan states:
>
> 46. *Surrendered Personal Property*. With respect to the allowed secured claim of Secured Claimholder Farm Credit Mid-America PCA, the Debtors surrender the following property:
>
>> c. 2015 crops and proceeds
>
> 47. *Retained Personal Property*. The Debtors shall retain the remaining personal property that secures the claim of secured claimholder Farm Credit Mid-America PCA, Inc., including the following described personal property:
>
>> d. None

Plan at 6-7. To the extent Farm Credit may argue that it holds as collateral certain property other than as listed in paragraph 46 of the Plan, the Debtors clarified in paragraph 47 and at the hearing conducted on the Plan on March 15, 2016, that there would be no collateral in which Farm Credit has an interest that would be retained through the Plan.

> In the various cash collateral orders, the Court ordered:
>
> Farm Credit Services of Mid-America, PCA ("Farm Credit") is granted a security interest and lien (the "Replacement Lien") upon all of the Debtors' post-petition property and assets of any kind and nature and the proceeds thereof, of the same nature and to the same extent and in the same priority that Farm Credit had secured interests in the pre-petition property of the Debtors as of the Petition Date, which Replacement Lien is in addition to the Pre-Petition Liens (the Pre-Petition Collateral and the collateral for the Replacement Lien described above is hereafter collectively referred to as the "Collateral").

Fifth Interim Order Granting Emergency Motion to Use Cash Collateral (Doc. 97) at 1-2 (as a representative of the various interim orders). Farm Credit claims the property in which it is secured consists of crop proceeds and crops. *See* Proof of Claim 16, Proof of Claim 17, Proof of Claim 18. Therefore, to the extent Farm Credit has a replacement lien, it is on crops and crop proceeds.

There are no crops, crop proceeds, or even things that might become crops or crop proceeds except for the $100,000 held by Farm Credit, the approximately $12,000 account receivable, and the approximately 15,000 bushels of corn remaining. The Debtors propose to surrender these pursuant to the Plan. Farm Credit does not argue that any other crops or crop proceeds presently exist. The Court should therefore confirm the Plan.

2. **Farm Credit does not presently have a security interest in crops not yet grown where the Debtors have not yet purchased the seed necessary to grow the crops.**

The replacement lien granted in the cash collateral orders has yet to attach to future crops. Upon filing of this case on August 19, 2015, all of the Debtors' property became property of the estate. 11 U.S.C. § 541. Pursuant to Section 1207(a), property of the estate includes all after-acquired property. The cash collateral orders allowed Farm Credit's security interest on after-acquired property to ride-through the bankruptcy filing notwithstanding Section 552(a).

In granting replacement liens, however, the cash collateral orders do not and cannot override the requirements for a security interest to attach, most importantly that there actually exists "post-petition property and assets of any kind and nature and the proceeds thereof . . . ." Fifth Interim Order Granting Emergency Motion to Use Cash Collateral (Doc. 97) at 1. Whether the security interest granted thereby attached to property is a question of state law. *Butner v. U.S.*, 440 U.S. 48, 54 (1979) (property interests are created and defined by state law); *see also Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law….").

Kentucky's UCC applies to security interests in personal property. K.R.S. 355.9-109. Farm Credit's security interest attaches to collateral only after the estate has "rights in the collateral." K.R.S. 355.9-203(2)(b). The estate did not have rights in future crops. *Sims v. Jamison*, 67 F.2d

8

409 (9th Cir. 1933). Though eighty years old, *Sims* stands for a very simple proposition: "there can be no lien upon something which does not exist at the time of adjudication." *Id.* at 411. Courts recognize in this situation that a "mere hope" or expectancy is not presently existing property. *See In re Burgess*, 438 F.3d 493 (5th Cir. 2006).

The UCC does not permit a security interest to presently attach to property that does not exist and will not exist until the future. The principle noted in *Sims* that "there can be no lien upon something which does not exist" is codified in the UCC. See K.R.S. 355.9-203(1) & (2) (to be enforceable, a security interest must "attach" to the subject property (i.e., the collateral) and attachment can only occur when the party offering the property as collateral has a right in the collateral or has the power to transfer a right in the collateral). "[I]n accordance with basic personal property conveyancing principles, the baseline rule is that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." Official Comment 6 to UCC 9-203.

Although the UCC permits a lender to have a security interest in after-acquired property, nothing in the UCC changes the requirement in K.R.S. 355.9-203(2)(b) that the debtor must have rights in the collateral before the security interest attaches. Official Comment 2 to UCC 9-204 ("This section adopts the principle of a 'continuing general lien' or 'floating lien.' It validates a security interest in the debtor's existing and (*upon acquisition*) future assets.") (emphasis added).

The Court authorized a replacement lien to attach to post-petition property notwithstanding Section 552(a). There still must, however, be some form of post-petition property, in this case, crops, to which the security interest could attach. There is none except the remaining 15,000 bushels of corn, the money in escrow, and the receivable. The Plan provides for the surrender of

9

all crops and crop proceeds in which the Debtors and the estate have rights—and therefore to which Farm Credit attached a security interest. The Court should therefore confirm the Plan.

3. **The value, as of the effective date of the Plan, of Farm Credit's security interest is equal to the cash held in escrow, the remaining accounts receivable, and the remaining corn.**

Even though the Debtors have elected to proceed pursuant to 11 U.S.C. § 1225(a)(5)(C) and surrender Farm Credit's collateral, the Plan also complies with 11 U.S.C. § 1225(a)(5)(B)(ii) because the value, as of the effective date of the plan, of property to be distributed by the debtor under the Plan on account of Farm Credit's secured claim is not less than the allowed amount of Farm Credit's secured claim. This is necessarily the case pursuant to 11 U.S.C. § 1225(a)(5)(C), since all the collateral supporting the secured claim is being surrendered. However, it is also the case by examining the value of all of the alleged collateral.

Farm Credit alleges in its proofs of claim that it has a lien on crops and crop proceeds. It also alleges that it has a security interest "upon all of the Debtors' post-petition property and assets of any kind and nature and the proceeds thereof, of the same nature and to the same extent and in the same priority that Farm Credit had secured interests in the pre-petition property of the Debtors as of the Petition Date . . . ." Fifth Interim Order Granting Emergency Motion to Use Cash Collateral (Doc. 97) at 1-2 (as a representative of the various interim orders). The post-petition property on which Farm Credit has a security interest is the same as the pre-petition property: crops and crop proceeds.

The Debtors have the following in crop and crop proceeds: Farm Credit is holding $100,000 in escrow for application to its secured claim, which amount represents proceeds from crops. Mr. Buckman has a receivable for sold crops in the approximate amount of $12,000. Mr. Buckman further holds approximately 15,000 bushels of corn remaining from the 2015 crop. With

the consent of Farm Credit, Mr. Buckman is selling this corn for $4.24 per bushel. The total amount of cash, receivables, and crops remaining is approximately $175,600.

Not only does Farm Credit want their security interest to extend to property acquired after the confirmation of the Plan, but also, at the hearing held on March 15, 2016, Farm Credit admitted that the value of this property at the time of confirmation is $0. This is consistent with Farm Credit's prior Motion for Termination of Automatic Stay and Abandonment of Property (Doc. 81) filed by Farm Credit, in which Farm Credit did not give any value to replacement liens on nonexisting future crops and alleged it was undersecured. This necessarily follows from the nonexistence of future crops at any time during this case pre-confirmation. The Debtors might, and expect to, have property in the future that consists of "crops and crop proceeds." In order for the Court to confirm the Plan, however, the Court need only hold that the Plan provides for the value as of the effective date to be distributed to the secured creditor. The Plan therefore complies with 11 U.S.C. § 1225(a)(5)(B)(ii), and the Court should confirm the Plan.

This discussion of 11 U.S.C. § 1225(a)(5)(B) ignores 11 U.S.C. § 1225(a)(5)(B)(i), in part because the Debtors have elected not to proceed pursuant to that section, but also in part because Courts have held it is difficult for crop farmers to meet the alternative requirement to surrender, that "the plan provides that the holder of such claim retain the lien securing such claim . . . ." 11 U.S.C. § 1225(a)(5)(B)(i). This is not the same standard as would be necessary to support a pre-confirmation adequate protection replacement lien.

> Clearly, Chapter 12 debtors can be allowed preconfirmation access to a secured creditor's cash collateral, provided the creditor receives an appropriate replacement lien or other "adequate protection" of its interests. 11 U.S.C. § 363(c)(2), (e). The Code does not precisely define "adequate protection," but instead provides a nonexclusive list of what sorts of relief can serve to adequately protect a creditor's interests where the debtor seeks to use cash collateral. 11 U.S.C. § 1205(b)(1)-(4). In particular, adequate protection for a debtor's use of cash collateral in Chapter 12 can consist of, either alone or in concert with other measures, providing the secured

11

> creditor "an additional or replacement lien to the extent that such ... use [of cash collateral] ... results in a decrease in the value of property securing a claim ...." 11 U.S.C. § 1205(b)(2). Courts have held that, under the proper facts, it is appropriate to allow a debtor the use of cash collateral upon condition the secured creditor be granted a lien on the crops to be produced through such use.

*In re Stallings*, 290 B.R. 777, 787-88 (Bankr. D. Idaho 2003) (citing *In re Brandon,* 93 B.R. 1002, 1002–03 (Bankr.D.Idaho 1988); *In re Pretzer,* 91 B.R. 428, 429–30 (Bankr.N.D.Ohio 1988); *In re Westcamp,* 78 B.R. 834, 836–39 (Bankr.S.D.Ohio 1987)).

This is different than what happens when it comes time for the Debtors to confirm the Plan. The same court in *Stallings* that acknowledged the use of crop replacement liens as adequate protection pre-confirmation, nevertheless refused to permit a floating security interest post-confirmation pursuant to 11 U.S.C. § 1225(a)(5)(B)(i). The court stated:

> It is probably impossible to satisfy [the "retain the lien" requirement of the Code], however, when the collateral involved are crops or accounts receivable or other property that must be disposed of quickly and cannot be retained by the debtor. If the claim is secured by crops or accounts receivable, the plan will usually have to provide for the property to be liquidated and the proceeds paid to the creditor or for the property to be surrendered to the secured creditor. Such a claim is not readily susceptible to cramdown.

*In re Stallings*, 290 B.R. 777, 788 (Bankr. D. Idaho 2003) (quoting 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1225.03[4][a], 1225–16 (15th ed. rev.2000)).

The history of this case has shown that Farm Credit was unlikely to accept any plan pursuant to 11 U.S.C. § 1225(a)(5)(A). The option to provide that Farm Credit retain its lien and receive payment pursuant to 11 U.S.C. § 1225(a)(5)(B) is a difficult one, and one that would have led to a contested confirmation hearing with Farm Credit. The Debtors chose the easiest option for dealing with Farm Credit and the only option remaining in 11 U.S.C. § 1225(a)(5): surrender. This is the same relief Farm Credit requested in asking for relief from the automatic stay. *See* Motion for Termination of Automatic Stay and Abandonment of Property (Doc. 81) filed by Farm Credit.

The Court should confirm the Plan because it gives Farm Credit its collateral and the value of its secured claim: the collateral itself. The Debtors are not required to pay Farm Credit any amounts over time on its secured claim because the secured claim is paid in full through the plan through surrender.

4. **The amount that would be paid to unsecured creditors if the estates of the Debtors were liquidated under chapter 7 on the effective date of the plan is less than the amount proposed to be paid in the plan.**

The Plan is in the best interest of creditors, who will receive more under the Plan than in a Chapter 7 liquidation. *See* 11 U.S.C. § 1225(a)(4). This test "requires performing a hypothetical liquidation analysis taking into account the value of the property available to creditors as of the effective date of the plan and then comparing that value to what each creditor will be receiving under the plan as proposed." *In re Pertuset*, 485 B.R. 478 (B.A.P. 6th Cir. 2012) (quoting *In re Novak,* 252 B.R. 487, 491 (Bankr.D.N.D.2000); citing *In re Perdue,* 95 B.R. 475, 476 (Bankr.W.D.Ky.1988)).

The Plan includes a liquidation analysis that provides for a liquidation value, as the exemptions were claimed on February 16, 2016, of $5,695.53. There has been no objection to the Debtors' estimated cost of disposition of assets at 6% for real property and 10% for personal property. The only factual issues are 1) the liquidation value of the 71 acre farm, and 2) the liquidation value of the residence. From that, the Court can conclude whether the Farm Services Agency mortgage would be fully paid from the sale of either piece of property such that the value of the other should be distributed to unsecured creditors.

Pursuant to 11 U.S.C. § 1225(b), the Debtors have devoted their projected disposable income toward the Plan, in the total amount of $32,610.99 over three years. The Plan therefore

provides more to creditors than they would otherwise receive in a Chapter 7 liquidation, and the Court should confirm the Plan.

    **5. The plan is feasible because the Debtors have a reasonable assurance that the plan can be effectuated.**

Courts generally only require that projections of both performance and expenditures fall within "reasonable ranges," rather than tight constraints. *In re Rape*, 104 B.R. 741 (W.D.N.C. 1989); *In re Dittmer*, 82 B.R. 1019 (Bankr. D.N.D. 1988); *In re Fowler*, 83 B.R. 39 (Bankr. D. Mont. 1987); *In re Reitz*, 79 B.R. 934 (Bankr. D. Kan. 1987); *In re Hochmuth Farms, Inc.*, 79 B.R. 266 (Bankr. D. Md. 1987); *In re Konzak*, 78 B.R. 990 (Bankr. D.N.D. 1987); *In re Big Hook Land & Cattle Co.*, 77 B.R. 793 (Bankr. D. Mont. 1987); *In re Hansen*, 77 B.R. 722 (Bankr. D.N.D. 1987); *In re Douglass*, 77 B.R. 714 (Bankr. W.D. Mo. 1987). The debtor is "required only to provide reasonable assurance, not a guarantee" of success. *In re Woods*, 465 B.R. 196 (B.A.P. 10th Cir. 2012); *In re Wise*, 2013 WL 2421984 (Bankr. D.S.C. May 31, 2013) (debtor's plan met the feasibility test for confirmation and providing positive support for requiring only "reasonable assurance" and not certainty).

The following list details factors which have influenced courts concerning feasibility specifically in farm cases.

> (1) Debtor's historic cash flow;
> (2) Historic and present levels of production and expense; *In re Melcher*, 416 B.R. 666 (D. Neb. 2009) (revenue projections that exceed historical earnings must be supported by demonstrated changes in operation); *In re Rape*, 104 B.R. 741 (W.D.N.C. 1989); *In re Foertsch*, 167 B.R. 555 (Bankr. D.N.D. 1994); *In re Creviston*, 157 B.R. 380 (Bankr. S.D. Ohio 1993); *In re Butler*, 101 B.R. 566 (Bankr. E.D. Ark. 1989); *In re Crowley*, 85 B.R. 76 (Bankr. W.D. Wis. 1988); *In re Snider Farms, Inc.*, 83 B.R. 1003 (Bankr. N.D. Ind. 1988); *In re Kloberdanz*, 83 B.R. 767 (Bankr. D. Colo. 1988).
> (3) Earning capacity of the debtor and immediate family; *In re Soper*, 152 B.R. 984 (Bankr. D. Kan. 1993).
> (4) Inclusion of all expenses in budgeting, including property and other taxes and utilities; *In re Alvstad*, 223 B.R. 733 (Bankr. D.N.D. 1998) (debtor could

not establish that cash flow would meet farm expenses together with projected meager living expenses). *See, e.g., In re Oster*, 152 B.R. 960 (Bankr. D.N.D. 1993); *In re Hagen*, 95 B.R. 708 (Bankr. D.N.D. 1989) (modification); *In re Hochmuth Farms, Inc.*, 79 B.R. 266 (Bankr. D. Md. 1987); *In re Big Hook Land & Cattle Co.*, 77 B.R. 793 (Bankr. D. Mont. 1987); *In re Hansen*, 77 B.R. 722 (Bankr. D.N.D. 1987).

 (5) Ability to project realistically, based upon historical performance, crop and/or livestock yields and prices and timetable for realization from sale; *In re Harper*, 157 B.R. 858 (Bankr. E.D. Ark. 1993). *See also In re Oster*, 152 B.R. 960 (Bankr. D.N.D. 1993); *In re Rott*, 94 B.R. 163 (Bankr. D.N.D. 1988); *In re Douglass*, 77 B.R. 714 (Bankr. W.D. Mo. 1987).

 (6) Whether debtor's projections of expenses and income fall within reasonable ranges as gauged by standard studies and measures of same, expert and debtor testimony, and the debtor's and court's experience; *See In re Weber*, 297 B.R. 567 (Bankr. N.D. Iowa 2003); *In re Gough*, 190 B.R. 455 (Bankr. M.D. Fla. 1996); *In re Oster*, 152 B.R. 960 (Bankr. D.N.D. 1993); *In re Adam*, 92 B.R. 732 (Bankr. E.D. Mich. 1988); *In re Townsend*, 90 B.R. 498 (Bankr. M.D. Fla. 1988).

 (7) Demonstration of continued sources of economical, financing and feed, seed, custom work (if own equipment is not used), and so forth; *In re Foertsch*, 167 B.R. 555 (Bankr. D.N.D. 1994) (written leases versus oral leases as assurance of continuity of operation); *In re Big Hook Land & Cattle Co.*, 77 B.R. 793 (Bankr. D. Mont. 1987).

 (8) Circumstance(s) which led to previous poor performance or cash flow, and evidence of elimination or mitigation of same; *See, e.g., In re Dittmer*, 82 B.R. 1019 (Bankr. D.N.D. 1988).

 (9) Maintenance of stability of operation and historic stability record (particularly important in livestock and dairy operations);

 (10) Whether debtor's debt and operational burdens have been reduced by sale of property or paring down of farm operation; *In re Standley*, 2013 WL 1191261 (Bankr. D. Mont. Mar. 22, 2013) (in addressing the debtors' need to sell collateral in order to establish feasibility, the court held that the planned sale needed to be approved before the plan could be confirmed; extending the time for confirmation to allow for approval).

 (11) Condition of operating equipment and livestock;

 (12) Prospects of refinancing all or part of the operation, and/or continued financing for successive years of operation;

 (13) Substantial payments made in the past to creditors, particularly secured creditors; *In re Gough*, 190 B.R. 455 (Bankr. M.D. Fla. 1996); *In re Fursman Ranch*, 38 B.R. 907 (Bankr. W.D. Mo. 1984).

 (14) Use of accepted farming methods and characterization of the debtor as a "good" or "poor" manager; *In re Cluck*, 101 B.R. 691 (Bankr. E.D. Okla. 1989).

 (15) Expectancy and interplay of family donations and donations of money, labor and expertise of money and/or property (seed, feed, livestock, and so forth) during the plan's life; *See, e.g., In re Cheatham*, 78 B.R. 104 (Bankr. E.D.N.C. 1987); *In re Edwardson*, 74 B.R. 831 (Bankr. D.N.D. 1987).

 (16) Labor donation to the farm effort;

(17) Income from outside sources;

(18) Income from government payments, contracts and/or subsidies (PIK, ASCS certificates, and so forth); *In re Kloberdanz*, 83 B.R. 767 (Bankr. D. Colo. 1988).

(19) Presence, maintenance and/or increase of base or allotments to support product prices;

(20) Presence or absence of crop and other insurance, both for income protection and as an item of expense properly projected; *In re Martin*, 66 B.R. 921 (Bankr. D. Mont. 1986) (chapter 11).

(21) Presence of accounting for next year's crop expenses and reasonable cushion for risk; *In re Coffman*, 90 B.R. 878 (Bankr. W.D. Tenn. 1988); *In re Townsend*, 90 B.R. 498 (Bankr. M.D. Fla. 1988) (lack of reserves affects feasibility); *In re Snider Farms, Inc.*, 83 B.R. 1003 (Bankr. N.D. Ind. 1988); *In re Fowler*, 83 B.R. 39 (Bankr. D. Mont. 1987); *In re Reitz*, 79 B.R. 934 (Bankr. D. Kan. 1987); *In re Hochmuth Farms, Inc.*, 79 B.R. 266 (Bankr. D. Md. 1987); *In re Konzak*, 78 B.R. 990 (Bankr. D.N.D. 1987); *In re Kocher*, 78 B.R. 844 (Bankr. S.D. Ohio 1987); *In re Big Hook Land & Cattle Co.*, 77 B.R. 793 (Bankr. D. Mont. 1987); *In re Hansen*, 77 B.R. 722 (Bankr. D.N.D. 1987); *In re Douglass*, 77 B.R. 714 (Bankr. W.D. Mo. 1987). *Contra In re Dues*, 98 B.R. 434 (Bankr. N.D. Ind. 1989) (failure to build cushion into budget acceptable; an accurate cash flow based on history probably already has some cushion).

(22) Utilization of farm production to minimize family living expenses; *In re Oster*, 152 B.R. 960 (Bankr. D.N.D. 1993).

(23) Evidence of maintenance and/or upgrading livestock/dairy herds by introduction or acquisition of new animals;

(24) Monitoring and treatment of operation for peak efficiency, for example, DHIA testing for dairy herds;

(25) Realistic valuation of secured claims and reasonable interest or discount rates for their repayment; *In re Ames*, 973 F.2d 849 (10th Cir. 1992); *In re Cool*, 81 B.R. 614 (Bankr. D. Mont. 1987); *In re Beyer*, 72 B.R. 525 (Bankr. D. Colo. 1987).

(26) Presence of plan provisions which protect creditors when feasibility is marginal, for example, recapture provisions for return of collateral to a creditor upon plan default; *In re Barnett*, 162 B.R. 535 (Bankr. W.D. Mo. 1993). *See, e.g., In re O'Farrell*, 74 B.R. 421 (Bankr. N.D. Fla. 1987).

(27) Resolution or projected resolution of adversary proceedings which have an impact upon plan operation; *See, e.g., In re Martin*, 78 B.R. 593 (Bankr. D. Mont. 1987); *In re Edwardson*, 74 B.R. 831 (Bankr. D.N.D. 1987); *In re Bentson*, 74 B.R. 56 (Bankr. D. Minn. 1987).

(28) Ability to meet lump sum payments or balloon provisions in plan; *In re Foertsch*, 167 B.R. 555 (Bankr. D.N.D. 1994); *In re Kuether*, 158 B.R. 151 (Bankr. D.N.D. 1993); *In re Borg*, 88 B.R. 288 (Bankr. D. Mont. 1988).

(29) Postpetition performance under protection of chapter 12 stay; *In re Creviston*, 157 B.R. 380 (Bankr. S.D. Ohio 1993); *In re Cluck*, 101 B.R. 691 (Bankr. E.D. Okla. 1989).

      (30) Ability to pay postpetition administrative expenses; *In re Winter*, 151 B.R. 278 (Bankr. W.D. Okla. 1993).
      (31) Presence or absence of nondischargeable debts; *In re Oster*, 152 B.R. 960 (Bankr. D.N.D. 1993).
      (32) Impact of trustee's surcharges. *Id.*

The Court should conclude, after reviewing these numerous factors, that the Plan is feasible as proposed. The Debtors are substantially restructuring their farming operations in the Plan, rather than merely doing what they have always done and hoping for the best. The Debtors are surrendering several pieces of property pursuant to the Plan. The Debtors have elected not to renew several leases of farmland, such that the amount under cultivation is less, but the Debtors have shed some of their higher lease expenses. The Debtors are obtaining additional insurance to better ensure that their revenues during the Plan term will be better protected from market swings. Farm Credit does not challenge the projected harvest, revenues, or expenses.

The only issue raised by way of objection is that, by the date of confirmation, the Debtors have not yet filed motions to borrow all of the money projected to be necessary to finance the continued farming operations, which is numbered above as consideration 7 and 12. Mr. Buckman will testify as to his ability and attempts to secure financing to continue operating the farm.

In the event the Court does not believe it can find reasonable assurance as to the financing consideration, the Court should nevertheless hold that there are reasonable assurances that the Plan as a whole is feasible. In particular, all secured creditors objecting to the Plan (that is, Farm Credit), is receiving its collateral through the Plan, as contemplated by consideration 26. Other secured creditors have accepted the plan. Feasibility is further buttressed by the ability of the Debtors to modify the Plan post-confirmation pursuant to 11 U.S.C. § 1229(a), in the event payments must be increased, reduced, or the time for them extended. In such event, all the requirements of 11 U.S.C. § 1225(a) to confirm a plan would still be required to be satisfied. 11 U.S.C. § 1229(b). If

disaster were to strike, and the Debtors were unable to continue their operations, this occurrence would come in the next couple months, mitigating further any impact to unsecured creditors that would be caused by a dismissal or conversion, since the Debtors' property would likely not change significantly in kind or condition.

The Court should consider the ability of the Debtors to obtain financing and conclude that the Debtors are likely to obtain financing and that any risk inherent in such attempts is mitigated by the other considerations. The Debtors have filed a motion to borrow some of the funds they expect to use for farming. The Debtors have negotiated but not yet filed motions to borrow additional funds for fertilizer and chemicals necessary for operations. Mr. Buckman will provide reasonable assurance to the Court that he will have the financing he needs to meet his expenses.

## Conclusion

For the foregoing reasons, the Court should overrule the Farm Credit Objection and confirm the Plan.

Respectfully Submitted,

*/s/ James E. McGhee III*
CHARITY B. NEUKOMM
JAMES E. McGHEE III
KAPLAN & PARTNERS LLP
710 West Main Street
Fourth Floor
Louisville KY 40202
Telephone: 502-540-8285
*Counsel for Debtors*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing pleading was served on this the 25th day of March, 2016 via ECF notice to all parties having entered their appearance in this matter and entitled to notice.

                                                   */s/ James E. McGhee III*
                                                   James E. McGhee III